09-971.111                                                                  May 5, 2011

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 09 CR 971 |
| | ) | |
| JEFFERY CARTER and | ) | |
| KENTRELL WILLIS, | ) | |
| | ) | |
| Defendants. | ) | |

### RULINGS ON PRETRIAL MOTIONS

The court makes the following rulings on the parties' pending pretrial motions.

### Government's Motion to Admit Evidence

The court agrees with the government's argument that evidence of defendant Willis's possession of the Ruger revolver in connection with another robbery on June 24, 2009 is admissible to prove his possession of that same revolver the previous day, June 23, 2009, the date charged in the indictment.

The evidence is also admissible pursuant to Rule 404(b) of the Federal Rules of Evidence. United States v. Canady, 578 F.3d 665 (7th Cir. 2009), cited by the government, is squarely on point. There, the trial court admitted evidence of the defendant's possession of the firearm in connection with a home invasion committed the same day as the charged offense of possessing the firearm. Possession was admissible pursuant to Rule 404(b), the

Court held, because "[t]he home invasion evidence was clearly directed toward establishing that Canady possessed the firearm." Id. at 671. Rejecting Canady's argument that the home invasion evidence was offered only to show propensity, the Court stated that "he ignores the fact that possession of the handgun was the central issue at trial," and, because possession is a continuing offense, proof that the defendant possessed the same firearm earlier in the day would support his conviction on the possession charge. Id.

Willis argues that the government has failed to show how proof of the possession of a firearm falls within any of the purposes enumerated in Rule 404(b), "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The government sees the evidence of possession on June 24, 2009 as "admissible to show defendant's motive, intent, knowledge and absence of mistake" or accident in his possession of the firearm. (Gov't's Mot. to Admit Evidence at 11-12.) We share the defendant's doubts about this argument. What the June 24 evidence shows is simply the fact of possession of the same firearm. It is the fact of possession that is, in the words of Rule 404(b), another crime, wrong or act that is "admissible for other purposes" (i.e., other than propensity). The rule lists some examples ("such as"), but the list is obviously not intended to be exhaustive. The number of crimes or acts that could be admissible to prove material facts other than propensity is extremely large.

- 3 -

Rule 404(b) provides examples of some of the most frequent permissible purposes, but the examples are clearly only illustrative. The omission of "possession" is of no consequence.

The government's motion to admit evidence [41] is granted.

### Government's Motion *in Limine* Regarding Redacted Statements of Defendant Jeffery Carter

Carter gave two post-arrest statements implicating Willis in the charged robbery of June 23, 2009 and the uncharged robbery of June 24, 2009. The government wishes to use those statements in a joint trial of the defendants and proposes to avoid the Bruton problem by redacting any reference to Willis by name and substituting the words "the other person." (This is a revision of the original redacted statements, which used the phrase "another individual.") Willis argues that in the circumstances of this case the jury would be very likely to infer that "the other person" is none other than himself. We agree, for several reasons.

First, the pistol. Carter describes it in the proposed redacted statement concerning June 23 as a dark-colored gun with a long barrel, which the other person pulls out of his pocket, and in the proposed redacted statement concerning June 24, Carter states that the other person still had the dark-colored gun with the long barrel. When Willis was arrested on June 24, in a van with other persons, the dark-colored gun with the long barrel was found inside the van, along with items stolen in both the June 23 and June 24 robberies.

Second, it would be obvious to the jury that the numerous references to "another person" is an effort to conceal something from them. The concealment is highly conspicuous. There are eleven references to "the other person" or "another person" in Carter's proposed redacted statement regarding June 23, and twelve more in the proposed redacted statement concerning June 24.

To suggest that the jury would be unlikely to infer that Carter's statements have been doctored to eliminate the name of Willis is to underestimate the intelligence and common sense of jurors. The government cites a number of cases in which redactions have been allowed. But the redaction issue is case-specific, and what works in one case will not necessarily work in another. The government's formulaic approach does not fit this case.

We believe that admission of the redacted statements would violate Willis's right to confrontation, and the government's motion *in limine* regarding redacted statements of defendant Jeffery Carter [49] is denied.

### Defendant Kentrell Willis's Motion for Severance of Co-Defendant and/or Count Four Based on Prejudicial Joinder

Willis moves that his trial be severed altogether from Carter's trial, or at least from Count Four, in which Carter alone is charged with being a felon in possession of the firearm. Willis's argument is that he will be unfairly prejudiced by allowing the jury to consider his case along with the unrelated possession charge against Carter as well as the uncharged robbery

- 5 -

in Count Four. Willis points out that the unfair prejudice would be even greater if the court were to admit Carter's redacted statements in a joint trial.

We have already indicated that the redacted statements will not be admitted. (What to do about the statements will be addressed in the next section of this order.) As far as the joint trial itself is concerned, we disagree with Willis that he would be unfairly prejudiced. As we held in the initial section of this order, granting the government's motion to admit evidence, proof of the June 24 robbery will be admitted because it tends to show the guilt of both defendants on the charges relating to the June 23 robbery. These two robberies were only a few hours apart, and, as the government's evidence will apparently show, parts of a continuous criminal escapade. We do not see how Willis will be prejudiced at all, let alone unfairly prejudiced, by his joinder with the Count Four gun charge against Carter. He will, of course, be prejudiced if the jury believes that the pistol found in the van along with Willis was the same pistol used in the June 23 robbery. But there will be nothing unfair about it.

The motion of the defendant Willis for severance from the defendant Carter and/or severance of Count Four [70] from his trial is denied.

### The Government's Suggestion of a Single Trial with Two Separate Juries

In its reply to Willis's response to its motion *in limine*

regarding redacted statements, the government suggests that, as an alternative to a joint trial using the redacted statements, "the Court impanel two juries for the trial in this case and excuse the Willis jury when the government offers Carter's unredacted statement into evidence." (Reply at 8.) As we remarked at the last status hearing, this seems to us a good solution to the Bruton problem in this case. The government cites Seventh Circuit law approving the practice in appropriate situations, and, for the reasons given by the government, we believe it would be appropriate to do it here. We will need to discuss the mechanics well in advance of trial; this will be an item for the status conference set for May 11, 2011.

The parties are advised that there will be a single trial in this case, with two juries, as suggested by the government.

### Defendant Carter's Motion to Sever Count Four and Exclude Evidence

Carter moves for the exclusion of his two statements implicating Willis on the ground that this evidence would violate Willis's Sixth Amendment right to confrontation. Willis made the same argument, and we agreed with him. As for Carter, he lacks standing to assert Willis's constitutional rights.

Carter also moves to sever Count Four for trial because it "shares nothing in common with Counts One, Two and Three." (Carter's Mot. to Sever at 3.) Carter points out factual differences between the two robberies, such as the fact that the

victim of the June 24 robbery failed to identify Willis and instead identified another person. Carter's argument as to why Count Four should be severed is similar to Willis's argument that we rejected. We reject Carter's arguments as well.

The motion of Carter to sever Count Four and exclude evidence [58] is denied.

### Defendant Carter's Motion to Suppress Identification

Carter moves to suppress his identification by the victim of the June 24 robbery on the basis that it was a result of impermissible suggestion by the arresting police officers. After the arrest of the defendants, the officers went to the victim's home and told him that they had the offenders in custody at a gas station. The officers drove the victim to the gas station and removed five men from the van, including Carter, Willis and an individual named Billups. The victim identified Carter and Billups (not Willis).

In response to the defendant's argument that this procedure was unduly suggestive (and therefore a violation of due process), the government cites a number of facts that tend to corroborate Carter's guilt of the robbery.

The parties agree that the court should follow the two-step analysis outlined in United States v. Rodgers, 387 F.3d 925, 936 (7th Cir. 2004). First, we should determine whether the defendant has established that the identification procedure was unduly

- 8 -

suggestive; if so, then, we should determine whether, under the totality of the circumstances, the identification was nonetheless reliable.

We believe that the defendant has established that the identification procedure <u>may</u> have been unduly suggestive. We cannot determine whether in fact it was without a hearing. But we know enough from the parties' submissions to be able to conclude that the procedure might well have been unduly suggestive and that a hearing is necessary.

As for the second step, we believe the government misunderstands what is meant by the "totality of the circumstances." The concept has to do with circumstances of the <u>identification</u>, not whether the circumstances surrounding the <u>crime</u> tend to corroborate the guilt of the defendant. We note that the list of factors for the court to consider, taken from the decision quoted by the government, <u>United States v. Hawkins</u>, 499 F.3d 703, 710 (7th Cir. 2007), includes nothing having to do with the defendant's actual guilt, but only factors affecting the ability of the witness to make a reliable identification.

Carter's motion to suppress identification [59] is taken under advisement. At the status hearing of May 11, we will set a date for a hearing on the motion. We will need to hear from Victim C and any other witness who can throw light on the relevant circumstances affecting the identification.

### Defendant Carter's Motion *in Limine*

Carter moves for exclusion of evidence that he used Victim B's telephone to call his parole agent, thereby revealing that he had a prior criminal record. He also moves to redact from his post-arrest statement a reference to the fact that he took courses while he was incarcerated.

The government agrees that both of these matters must be redacted so as to eliminate any reference to a prior criminal record. We can discuss the specifics of Carter's motion in limine [60] at the May 11 status conference.[1]

DATE:   May 5, 2011

ENTER:  _____
        John F. Grady, United States District Judge

---

[1] We are wondering whether Carter's call to his parole officer had to do with his conviction mentioned in Count Four. If it did, then we would see no harm in admitting evidence that he used the victim's telephone to make the call.